UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| LUCILLE PARKER, | **REPORT AND RECOMMENDATION** |
| Plaintiff, | |
| | 06-CV-1458 |
| V. | (GLS/VEB) |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | |
| Defendant. | |

---

## I. INTRODUCTION

In April of 2000, Plaintiff Lucille Parker filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since July of 1997, primarily due to depression, recurrent anxiety with panic attacks, bipolar disorder and migraine headaches. Plaintiff's application for benefits was denied by the Commissioner of Social Security.

Plaintiff, through her attorney, Louise Marie Tarantino, Esq., of the Empire Justice Center in Albany, New York, commenced this action on December 4, 2006, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 20, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant

to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

## II. BACKGROUND

The relevant procedural history may be summarized as follows. Plaintiff applied for DIB[1] and SSI benefits on April 6, 2000, alleging that she had been unable to work since July 10, 1997. (T[2] at 54-56, 65-74). The application was denied on July 28, 2000. (T at 31-35). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on October 11, 2000. (T at 36). On May 18, 2001, Plaintiff appeared with Darlene Ebron, a paralegal with the Legal Aid Society of Northeastern New York, at a hearing in Albany, New York before ALJ Joseph Gibbons. (T at 258-84).

On June 28, 2001, ALJ Gibbons issued a written decision denying Plaintiff's application for benefits. (T at 20-26). The ALJ's decision became the Commissioner's decision on September 28, 2004, when the Social Security Administration's Appeals Council denied Plaintiff's request for review. (T at 6-9).

Plaintiff commenced this action on December 4, 2006. (Docket No. 1). The Commissioner interposed an Answer on April 11, 2007. (Docket No. 8). Plaintiff, through counsel, filed a supporting Brief on July 13, 2007. (Docket No. 13). The Commissioner filed a Brief in opposition on August 28, 2007. (Docket No. 15).

---

[1] Plaintiff's attorney states that only the application for DIB is included in the administrative record, but that Plaintiff also filed for SSI benefits on April 6, 2000. See (Docket No. 13 at 2 n. 4). In addition, counsel explains that a subsequent application by Plaintiff for SSI benefits was apparently approved and that Plaintiff is therefore receiving SSI benefits. The instant case involves her claim for retroactive SSI benefits, along with retroactive and future DIB. (Docket No. 13 at 3 n.7).

[2] Citations to "T" refer to the Administrative Transcript. (Docket No. 6)

2

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York, "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ."

### III. DISCUSSION

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

> If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.
>
> If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.
>
> Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

   **1.   Commissioner's Decision**

The ALJ noted that Plaintiff's application for SSI and DIB met the insured status

requirements of sections 216 (i) of the Social Security Act and Plaintiff was "insured for disability benefits through the date of this decision." (T at 21).

With regard to Plaintiff's claim for SSI benefits, the ALJ determined that Plaintiff had not engaged in substantial gainful activity "since her alleged onset date." (T at 21). The ALJ found that Plaintiff had impairments (alcoholism, depression and anxiety) considered "severe" under the applicable regulations. (T at 22). However, the ALJ concluded that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the Social Security Administration Regulations (the "Regulations"). (T at 22). The ALJ determined that Plaintiff's primary diagnosis and impairment was alcohol dependency. (T at 22). The ALJ found the alcohol dependency to be a "contributing factor material to the determination of disability." (T at 23).

After reviewing the medical evidence, the ALJ concluded that Plaintiff had the "residual functional capacity to perform work at any exertional level which is low stress, and not in proximity to alcohol." (T at 24).

The ALJ concluded that Plaintiff had past relevant work history as a teacher's assistant at a day care center, clerk-typist, and housekeeper. (T at 24). Considering Plaintiff's residual functional capacity, the ALJ found that Plaintiff could return to her work as a teacher's assistant or housekeeper. (T at 24) Accordingly, the ALJ concluded that Plaintiff was not under a "disability," as that term is defined under the Act, and denied the application for benefits. (T at 26).

As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (T at 6-9).

**2.     Plaintiff's Claims**

Plaintiff contends that the Commissioner's decision should be reversed.  Plaintiff offers two principal arguments in support of her position.  First, she argues that the ALJ erred in finding that her drug/alcohol addiction was a contributing factor material to the disability determination. Second, Plaintiff contends that the ALJ erred in finding that she can perform her past relevant work.  This Court will address each argument in turn.

**a.     Alcohol As Contributing Factor**

The Social Security Act establishes that "an individual shall not be considered disabled ... if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).

Thus, "substance abuse becomes material to a benefit determination only after the claimant is found to be disabled" according to the sequential analysis. Roy v. Massanari, No. 3:01-CV-306, 2002 WL 32502101, at *2 n. 3 (D. Conn. June 12, 2002); see 20 C.F.R. § 404.1535(a).

The "plain text of the regulation" requires the ALJ to first use the standard sequential analysis to determine whether the claimant is disabled, "without segregating out any effects that might be due to substance use disorders." Day v. Astrue, No. 07-CV-157, 2008 WL 63285, at *5 (E.D.N.Y. Jan 3, 2008) (quoting Brueggemann v. Barnhart, 348 F.3d 689, 695 (8th Cir.2003)); see e.g., Orr v. Barnhart, 375 F.Supp.2d 193, 201 (W.D.N.Y. 2005) (remanding to require the ALJ "to consider the ill effects that plaintiff's alcoholism had on her impairments and limitations" when determining the issue of disability and "only after

finding that plaintiff is disabled, determine which impairments would remain if plaintiff stopped using alcohol"). The claimant bears the burden of proving that substance abuse is not a contributing factor material to the disability determination. <u>White v. Comm'r of Soc. Sec.</u>, 302 F.Supp.2d 170, 173 (W.D.N.Y.2004).

### i.    Application of Legal Standard

In the present case, Plaintiff suggests that the ALJ misapplied the applicable legal standard by failing to determine in the first instance whether she was disabled. As set forth above, the ALJ is required to determine, as a threshold matter, whether the claimant is disabled without segregating the effects of substance abuse.

However, contrary to Plaintiff's assertion, the ALJ engaged in this threshold analysis and specifically found that "[c]onsidering the effects of alcohol use and dependency as well as depression, anxiety, and/or bi-polar disorder together, the evidence as a whole discloses medical findings which meet in severity the clinical criteria of listing 12.09." (T at 23). A claimant with impairments that meets one of the Listings is disabled under the Act. 20 C.F.R. §§ 404.1520 (a)(4)(iii), 416.920 (a)(4)(iii).

The ALJ then proceeded to the next step in the process and determined that Plaintiff's substantial abuse and dependency was "a contributing factor material to the determination of disability." (T at 23). He then appropriately analyzed whether Plaintiff would still be disabled if the substance abuse stopped, ultimately concluding that she would not be disabled under such circumstances. (T at 23). The Court finds that the ALJ applied the appropriate legal standard. Plaintiff's suggestion that the ALJ failed to determine in the first instance whether she was disabled is contradicted by the record.

### ii.     Materiality of Alcohol Abuse

Plaintiff next argues that the ALJ's finding of alcohol as a contributing factor is not supported by substantial evidence.

The "key factor" in determining whether substance abuse is material is whether the claimant would meet the definition of disabled if he or she stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b)(1). To make this determination, the ALJ must evaluate which of the claimant's limitations would remain if he or she stopped using alcohol, "and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. § 404.1535(b)(2). If the remaining limitations are not disabling, then alcohol abuse is material, but if the remaining limitations are disabling, then alcoholism is not material and the claimant may be entitled to benefits notwithstanding the substance abuse issue. 20 C.F.R. § 404.1535(b)(2)(i)-(ii).

Plaintiff notes that she has a number of psychiatric impairments, which she contends are unrelated to her alcoholism.  For example, Plaintiff was diagnosed as having severe manic depression "NOS" (not otherwise specified) and major depression recurrent with psychotic features.  (T at 148, 146).  The record also indicates that Plaintiff may suffer from bipolar disorder.  (T at 96, 113, 145).  Plaintiff's medications (Paxil, Zyprexa, and Serzone) are prescribed for treatment of her psychiatric conditions, not alcoholism. (T at 94).

Dr. Bruce Maslack examined Plaintiff on behalf of the New York State Department of Social Services and concluded that Plaintiff's psychiatric impairments would be expected to continue even if the use of alcohol ceased. (T at 96). Dr. James Thalmann, a consultive examiner, met with Plaintiff for the purpose of conducting a psychiatric evaluation.  Dr. Thalmann noted that the impact of alcohol and medication with regard to Plaintiff's

psychiatric conditions was "unclear." (T at 111-12). Plaintiff also submitted a psychiatric assessment dated May 24, 2001, and prepared by her treating psychiatrist, Dr. Muhammed Ali Hyder. (Exhibit A, attached to Docket No. 13).[3] Dr. Hyder opined that Plaintiff's ongoing depression "may be due to stresses." (Exhibit A, at p. 3).

The ALJ recognized Plaintiff's psychiatric impairments, but found that they were "significantly worsened by alcohol use." (T at 23). Based upon his review of the record, the ALJ concluded that the mental impairments were only functionally limiting in times of high stress, provided that Plaintiff refrained from alcohol use and complied with her treatment program. (T at 24). As such, the ALJ determined that, absent substance abuse, Plaintiff retained the residual functional capacity to perform low stress work, not in proximity to alcohol. (T at 24).

In other words, the ALJ did recognize Plaintiff's psychiatric impairments and concluded that those impairments would remain even absent alcohol abuse. However, he found that the impairments would not be disabling if Plaintiff complied with treatment and refrained from using alcohol. This Court finds that the ALJ's determination in this regard was supported by substantial evidence.

First, the record supports the ALJ's finding that Plaintiff's mental impairments are significantly worsened by alcohol abuse. Plaintiff was hospitalized in 1997 as a result of

---

[3]It appears that this report was not submitted to the ALJ, but was submitted to the Appeals Council. (T at 9, 13). "Social Security regulations expressly authorize a claimant to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision." Schaal v. Apfel, 134 F.3d 496, 505 n.8 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.970(b), 416.1470(b)). "This evidence becomes part of the administrative record on appeal to the federal courts when the Appeals Council denies review." Id. In any event, Dr. Hyder's report is essentially consistent with the evidence considered by the ALJ. Indeed, the ALJ concluded that Plaintiff's psychological impairments were impacted by stress, which is the same basic conclusion reached by Dr. Hyder.

suicidal ideation and was noted to be under the influence of alcohol. (T at 171). She was noted to be a persistent abuser of alcohol, with frequent intoxication and withdrawal symptoms, marked by an inability to perform occupational functioning or usual social activities. (T at 175). When she was hospitalized again in 2000 after expressing suicidal ideation, Plaintiff was noted to smell of alcohol. (T at 133). The hospital discharge summary notes that Plaintiff stated that she had been "clean" for several months and that the hospitalization coincided with a "relapse." (T at 133).

In addition, the record support's the ALJ's determination that Plaintiff's impairments improved when she refrained from abusing alcohol. Progress notes prepared by Plaintiff's treating psychiatrist in November 2000 indicated that Plaintiff was abstaining from alcohol and noted that she was "smiling," "highly sociable," and denied depression. (T at 236). The progress notes from December 2000 contained similar findings. (T at 236).

Although Dr. Thalmann, the consultive examiner, indicated that the impact of alcohol and medication on Plaintiff's impairments was "unclear," he noted that, at the time of his examination, Plaintiff had been in recovery for four months and was maintaining her sobriety. (T at 113). Dr. Thalmann found that Plaintiff was "cooperative" and "relate[d] well." (T at 112). He noted that she was able to manage her activities of daily living, "follow and understand simple directions, perform simple, rote tasks under supervision, maintain attention and concentration for tasks, make appropriate decisions consistently, perform tasks, demonstrate ability to learn new tasks, perform complex tasks independently, relate adequately with others, [and] appropriately deal with stress." (T at 113).

Lastly, Dr. Michelle Marks, the non-examining State Agency medical consultant, reviewed the record and concluded that Plaintiff could understand, remember and follow

directions, attend and concentrate, complete chores, socialize and get along with others. (T at 118). In addition, Dr. Marks determined that Plaintiff had no restrictions with regard to activities of daily living, no difficulties in maintaining social functioning, and "seldom" had deficiencies of concentration, persistence or pace. (T at 126).

In light of the foregoing, the Court finds that the ALJ's finding that alcohol abuse and dependency was a contributing factor material to the disability determination was supported by substantial evidence. The record strongly indicates that Plaintiff's functioning improves significantly when she abstains from alcohol and complies with treatment, to the point where she is able to function with minimal limitation.

### iii.    Separation of Mental Impairments from Alcoholism

Plaintiff contends that, even if alcohol abuse exacerbated her psychiatric symptoms, this would not necessarily mean that the alcohol abuse was material to her disability. In support of this argument, Plaintiff cites Frederick v. Barnhart, 317 F.Supp. 2d 286 (W.D.N.Y. 2004). In Frederick, the ALJ noted that the plaintiff's psychiatric disorders responded to treatment and concluded that the plaintiff would be able to return to unskilled work at all exertional levels if she abstained from alcohol. Id. at 292.

The District Court reversed, noting that the ALJ's "finding that there would be *improvement* in [plaintiff's] symptoms is not dispositive of whether her alcoholism is material to her disability." Id. at 293 (emphasis added). The District Court concluded that the ALJ was required "to identify plaintiff's remaining limitations so that he could complete the materiality analysis by determining whether these impairments (absent alcohol abuse) were themselves disabling within the meaning of the Act." Id. Because the ALJ had not engaged in that analysis, the District Court concluded that the Commissioner's decision had to be

reversed. Id.

However, the instant case is readily distinguishable from Frederick. In fact, the ALJ in this case engaged in precisely the sort of analysis identified in Frederick. Specifically, the ALJ noted that Plaintiff's mental impairments appeared to be affected by "situational stressors" that "contributed" to her past relapses. (T at 24). The ALJ recognized that these impairments would continue even if Plaintiff abstained from alcohol and therefore he considered whether those limitations were themselves disabling under the Act. (T at 24).

Upon that consideration, the ALJ determined that Plaintiff should not work at a "highly stressful occupation," but (absent alcohol abuse) retained the residual functional capacity to "perform work at any exertional level which is low stress, and not in proximity to alcohol." (T at 24). Accordingly, the ALJ gave due consideration to the limiting effects of Plaintiff's psychiatric impairments, separate and apart from her alcohol abuse, and this Court finds that the ALJ's determination in this regard was supported by substantial evidence and in accordance with applicable law.

### b. Ability to Perform Past Relevant Work

Plaintiff further argues that the ALJ erred by determining that she could return to her past relevant work. First, she contends that her past employment was not "past relevant work," as defined under the Act. Second, she asserts that she lacked the ability to return to her former employment. This Court will address each argument in turn.

To qualify as past relevant work, the work must have been performed in the last fifteen (15) years, have been performed long enough for the claimant to have learned to do it, and qualify as substantial gainful activity. 20 C.F.R. § 404.1560(b).

In the present case, Plaintiff reported that she worked as a day care teacher's

13

assistant from May 1984 until December 1984, a period of seven months. (T at 67). During that year, she earned $1,520.76. (T at 58,63). Under the Commissioner's Regulations, earnings of at least $300 a month between 1980 and 1989 are generally considered to constitute substantial gainful activity. 20 C.F.R. § 404.1574(b)(2). Plaintiff argues that her work as a teacher's assistant cannot be considered substantial gainful activity because her average monthly salary was $217.25.

Further, Plaintiff reported that she worked as a housekeeper from November 1989 through July of 1997. Under the Commissioner's Regulations, earnings of at least $500 a month between January of 1990 and June of 1999 are generally considered to constitute substantial gainful activity. 20 C.F.R. § 404.1574(b)(2). Plaintiff asserts that her work as a housekeeper likewise did not constitute substantial gainful activity because her wages only exceeded the wage threshold in one year, 1990, and her income was inflated that year by working a second job. (T at 55, 85).

However, Plaintiff's argument fails to account for the fact that the Commissioner's Regulations indicate that earnings at the specified levels will "generally" and "ordinarily" be considered indicative of substantial gainful activity. The claimant's earnings record does not establish a bright line rule regarding what constitutes substantial gainful activity. Rather, the Regulations set a level of earnings that will be presumptively be considered substantial gainful activity. 20 C.F.R. § 404.1574(b)(2); see also Koss v. Schweiker, 582 F.Supp. 518, 521 (S.D.N.Y.1984) (noting that "§ 404.1574(b)(2)'s 'guidelines' are not mandatory.").

Indeed, the Regulations specifically provide for the consideration of other information, including whether the work performed was "comparable to that of unimpaired

14

people in your community who are doing the same or similar occupations as their means of livelihood, taking into account the time, energy, skill, and responsibility involved in the work." 20 C.F.R. § 404.1574(b)(3)(ii)(A); see also Nazzaro v. Callahan, 978 F.Supp. 452, 461 (W.D.N.Y. 1997) (noting that ALJ may consider the following factors when determining whether claimant engaged in substantial gainful activity "(1) earnings, (2) the nature of the work performed, (3) how well the claimant performs the work, (4) whether the work is done under special conditions, (5) whether the claimant is self-employed, and (6) the amount of time spent working.").

Plaintiff's testimony indicated that the job duties as a housekeeper and teacher's aide were quite demanding and comparable to work performed by unimpaired people in the community. (T at 67, 271-72). Plaintiff's employment as a housekeeper lasted for more than seven (7) years. Given Plaintiff's testimony and work history, this Court finds that the ALJ's conclusion that these jobs constituted past relevant work was supported by substantial evidence.

Plaintiff also argues, even if her prior employment is considered "past relevant work," she did not retain the residual functional capacity to perform the basic mental demands of that work. However, for the reasons set forth above in Section III.B.2.a.ii, the ALJ's determination with respect to Plaintiff's residual functional capacity was supported by substantial evidence. In sum, the ALJ reviewed the record and concluded that, absent alcohol and with medication, Plaintiff could perform work in low stress situations. Given the evidence concerning the improvement in Plaintiff's condition when she avoided alcohol and stress, this Court finds that the ALJ's conclusion was supported by substantial evidence. See Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) ("Substantial evidence

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating providers and consultative examiners, and afforded Plaintiff's claims of limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error and because substantial evidence supports the Commissioner's decision, the Court recommends that the Commissioner be GRANTED judgment on the pleadings.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:     April 15, 2009

           Syracuse, New York

**V. ORDERS**

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

April 15, 2009

_____
Victor E. Bianchini
United States Magistrate Judge